**ALEXANDER et al. v. BYRAM et al.**

No. 5222.

Court of Civil Appeals of Texas. Texarkana.
May 19, 1938.

E. A. Tharp, of Mineola, and Charles E. Long, Jr., of Dallas, for appellants.

Rodes & Garrett, of Emory, Lee A. & Allen Clark, of Greenville, and J. A. Amis, Jr., of Emory, for appellees.

JOHNSON, Chief Justice.

W. P. Bullard and Fronie Bullard were married in 1893. On January 14, 1901, a deed was executed and delivered by Erie and T. Higginbotham conveying a certain 60-acre tract of land in Rains County to W. P. Bullard. The deed recited the following consideration:

"* * * $300.00 Dollars to us paid and secured to be paid by W. P. Bullard as follows:

"Seventy five ($75.00) Dollars cash in hand paid the receipt of which is hereby fully acknowledged, and the assumption by said W. P. Bullard of two certain vendor's lien notes described as follows: Given by Erie Higginbotham and T. Higginbotham to J. S. Byram or order for the sum of $112.50 each of date Nov. 19th, 1898, 1st note due and payable Dec. 1st, 1899, and 2nd note due and payable Dec. 1st, 1900 with interest from date at the rate of 10 per cent per annum, * * *"

W. P. Bullard died intestate in 1920. Shortly after his death, the surviving wife, Fronie Bullard, duly qualified as community administratrix of the community estate of herself and deceased husband, W. P. Bullard. The 60-acre tract of land

above mentioned together with certain personal property was inventoried as belonging to the community estate of said W. P. Bullard and wife, Fronie Bullard. F. W. Myers, W. R. Reynolds, J. S. Byram, and G. A. Morgan were the sureties on the community administration bond of Fronie Bullard. By instrument recorded May 5, 1927, Fronie Bullard conveyed ½ the minerals in and under the 60 acres of land. Fronie Bullard died intestate in July, 1928. There were no children of the marriage of W. P. and Fronie Bullard, but W. P. Bullard left surviving him heirs by a former marriage, and Fronie Bullard left surviving her collateral kindred.

In 1935 appellants, the heirs of W. P. Bullard, filed this suit against (1) the heirs of Fronie Bullard, (2) the sureties on the community administration bond of said Fronie Bullard (except the surety G. A. Morgan, alleged to be deceased and his estate insolvent) and (3) the assignees of the mineral interests conveyed by Fronie Bullard under the 60 acres of land. The petition of appellants, plaintiffs in the trial court, is full in its allegations of facts and contains a number of counts. It will be sufficient here to state that the petition seeks an accounting of the community estate of W. P. and Fronie Bullard, and to recover a ½ interest in and for partition of said 60 acres of land alleged to be a part of said community estate. The petition contains a plea in trespass to try title describing a 50-acre tract of land as well as the 60-acre tract. The answer of the defendants, heirs of Fronie Bullard, contains a general denial and plea of not guilty and specially pleads that the 60 acres as well as the 50-acre tract described in plaintiffs' petition was the separate property of Fronie Bullard. As to the 50-acre tract of land, said defendants allege that it had been acquired by Fronie Bullard and her first husband, W. C. Greer. As to the 60-acre tract said defendants specially alleged that it was the separate property of Fronie Bullard by reason of having been paid for with separate property of Fronie Bullard; that it was originally conveyed by J. S. Byram and others to Erie Higginbotham; that in said conveyance the two vendor's lien notes for $112.50 each were retained by J. S. Byram; that Erie Higginbotham defaulted in payment of the notes and surrendered the land to J. S. Byram but had not reconveyed same to Byram; that Byram thereupon sold the land to his sister, Fronie

Bullard, in consideration of certain live stock and a wagon which the said Fronie Bullard owned prior to her marriage to W. P. Bullard and that W. P. Bullard paid no part of the consideration expressed in the deed from Erie and T. Higginbotham to W. P. Bullard.

In answer to plaintiffs' plea of an accounting of the estate of W. P. and Fronie Bullard, defendants pleaded the statutes of two and four years' limitation. F. W. Myers and W. R. Reynolds, two of the sureties on the community administration bond of Fronie Bullard, disclaimed any interest in the land. Their answer also contained a general denial and pleas of two and four years' limitation. The defendants North Central Texas Oil Company of Texas and J. S. Byram, owners of the mineral interest conveyed by Fronie Bullard in the 60 acres of land, answered by general denial and plea of not guilty.

On trial of the case at the close of the evidence and by agreement and request of all parties, the jury was discharged and all matters of fact as well as of law were submitted to the court. The court found that both the 60-acre tract and the 50-acre tract belonged to the separate estate of Fronie Bullard. The plea of limitation filed by the sureties on Fronie Bullard's community administration bond was sustained. Judgment was entered to the effect that plaintiffs take nothing by reason of their suit. Plaintiffs have appealed.

■ Appellants' first proposition complains of the action of the trial court in overruling their objections to the following testimony of A. J. Byram as being in violation of Article 3716, R.C.S.

"Q. Do you know and are you familiar with the property that Mrs. Fronie Greer had at the time she married Bill Bullard? A. I am pretty well acquainted with it.

"Q. You said awhile ago she had this fifty acres of land she and Bill Greer had bought? A. Yes, sir.

"Q. What, if anything, in personal property did she have? A. She owned some cows and some horses.

"Q. Do you know how many cows she owned? A. She has some seven or eight cows and a horse and a mare.

"Q. Two head of horses; a horse and a mare? A. Yes, sir.

"Q. You know she had that much property when Bill Bullard married her and went to live on this land? A. Yes, sir.

"Q. Do you know what became of that property? A. Well, yes, I know what became of part of it.

"Q. What did she do with it; who did she let have it, if anybody? A. She let my brother (J. S. Byram) have the property, or part of it; she let him have a horse and a mare and five head of cattle, her individual property."

This witness, A. J. Byram, was a defendant in the suit. He was a half-brother of Fronie Bullard, deceased. He was claiming, and recovered, an interest in the land as an heir to her estate. He was called to testify as a witness for himself and the other defendants. The testimony was elicited on direct examination by his attorney. It has a direct bearing upon the alleged transaction between the deceased, Fronie Bullard, and J. S. Byram in which it is claimed by the defendants that Fronie Bullard paid for the 60 acres of land with her separate property. The testimony violated the provisions of Article 3716, and appellants' objection thereto should have been sustained. Parks v. Caudle, 58 Tex. 216.

The defendant W. R. Reynolds was called as a witness for himself and the other defendants and over the objections of plaintiffs was permitted to testify as follows:

"Q. You stated awhile ago you were present at Mrs. Bullard's some time about 1901 when a deed was made down there? A. Yes, sir.

"Q. I will ask you to state, if you know, what land was involved in that transaction. A. It was the block of land that joined them on the South.

"Q. What is known as the 60 acre tract of land involved in this law suit? A. Yes, sir.

"Q. Just state what occurred down there at that time. A. Well, when I went in the house there was a fellow sitting there writing—Mr. Hebison—and after I had been in there awhile he asked Mrs. Bullard if she wanted to hear the deed read and she said she did, and he read the deed and it was to Bill Bullard and his heirs and she told him that the deed should have been to her and he told her that was as good a deed as she could get, it was to Bill Bullard and his heirs and she was his heir and she told him she didn't think so, and there was several words passed and she was a very plain spoken woman and finally she said: 'Young fellow, my stuff I earned before I married Bill Bullard is going to pay for this,' and he said it was a whole lot of trouble to write a deed and she said: 'You ought to write it right at first.'

"Q. Were Mr. and Mrs. Higginbotham there? A. I didn't see them there, I just stepped in to warm.

"Q. Mr. Hill was the notary public that took the acknowledgment? A. Yes, sir.

"Q. Was anything said about what particular property was being paid for the land? A. No, sir.

"Q. Just her property that she had earned before she married Mr. Bullard? A. Yes, sir."

Appellees contend that the provisions of R.S., Art. 3716, have no application to this testimony of the defendant W. R. Reynolds for the reason that "Reynolds had filed a disclaimer of any interest in the land; and the allegations in plaintiffs' petition seeking to recover against said Reynolds as surety upon the community bond of Mrs. Bullard was excluded from the case upon appellants' demurrer thereto. Reynolds was, therefore, not really a party to the suit or otherwise interested in the case." We are unable to agree with appellees' contention. In his answer Reynolds disclaimed any interest in the land, but his answer contains no demurrer or special exception, nor does the record show that the court sustained a demurrer or exception to plaintiffs' petition against any of the defendants. On the other hand, it appears from the record before us that Reynolds was held as a proper party-defendant in the case to its final conclusion and was relieved of liability only by the final judgment of the court sustaining his defense of limitation. In the circumstances his testimony violated the provisions of art. 3716. Haberzettle v. Dearing, Tex. Civ.App., 80 S.W. 539; Williams v. Neill, Tex.Civ.App., 152 S.W. 693; 14 Tex.Jur. 319, et seq.

As stated before, this cause was submitted to the court without a jury. In the absence of any request therefor the court filed no findings of fact or conclusions of law. There is an approved statement of facts in the record. If there is any competent testimony contained in the statement of facts supporting the judgment, it may be presumed that the trial court disregarded the above-mentioned incompetent testimony in rendering his judgment. 3

Tex.Jur. 1060, Sec. 748. We have made an examination of the statement of facts, and it appears that after eliminating the above-mentioned incompetent testimony of A. J. Byram and W. R. Reynolds, the only remaining testimony tending to show that the 60 acres of land was the separate property of Fronie Bullard is the testimony of Mrs. Ellen Byram as follows:

"Q. Did you know Bill Bullard when they married? A. Yes, sir.

"Q. Did you know his financial condition, whether he had anything or not when he married her? A. Of course he didn't.

"Q. Was your husband and his mother and brother interested in a piece of land joining this 50 acres? A. Yes, sir.

"Q. Do you know about Mr. Byram and his mother and his brothers selling that land to Mr. Higginbotham? A. Yes, sir.

"Q. Did Mr. Higginbotham pay for that tract of land? A. He paid $75.00.

"Q. Did he ever pay the other note? A. No, sir.

"Q. Do you know whether or not your husband bought the other interest of his brother? A. Yes, sir; he did.

"Q. He acquired the interest of the others in those notes Mr. Higginbotham gave? A. Yes, sir.

"Q. Did Mr. Higginbotham ever pay Mr. Byram for those notes? A. No, sir.

"Q. Did he surrender the land back to him or not? A. Yes, sir.

"Q. Did you all move on it after Mr. Higginbotham surrendered it? A. Yes, sir.

"Q. Later on did your husband do anything with that land? Did he sell it to anybody? A. Sold it to his sister.

"Q. What is his sister's name? A. Fronie Bullard.

"Q. You say he sold it to his sister, Mrs. Fronie Bullard? A. Yes, sir.

"Q. What did she pay him for it? A. $300.00.

"Q. What kind of property was it in? A. Horses, mules and cattle.

"Q. You say that was in horses and cattle? A. Yes, sir, and two mules.

"Q. State whether or not you know that property was the separate property of Mrs. Bullard or community property between she and her husband, W. P. Bullard. A. (No answer).

"Q. Do you know whether or not the property your husband got from Mrs. Bullard was property that she owned prior to the time she married W. P. Bullard? A. (No answer)." .

 The deed from Erie and T. Higginbotham conveying the 60 acres of land to W. P. Bullard, during the marriage of W. P. Bullard and Fronie Bullard, raised the presumption that it thereby became the community property of W. P. and Fronie Bullard. To this presumption was added the fact that after the death of W. P. Bullard it was inventoried by Fronie Bullard as community property of herself and her deceased husband, W. P. Bullard. The above testimony of Ellen Byram was an effort to overcome that presumption by attempting to show that the land was paid for with horses, mules and cattle belonging to the separate estate of Fronie Bullard, but the record shows she failed to answer the questions making inquiry of that particular fact.

That part of the judgment of the trial court awarding defendants recovery of the 50 acres of land is affirmed; but in all other respects the judgment of the trial court is reversed and the cause remanded.